IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WEILI KAO,

        Petitioner,                         No. 2:09-cv-2674 JFM (HC)

    vs.

TINA HORNBEAK,

        Respondent.                  ORDER

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is proceeding before a United States Magistrate Judge with the consent of the parties pursuant to 28 U.S.C. § 636(c). See Consents filed October 7, 2009 and November 20, 2009.

        This action is proceeding on petitioner's original petition for writ of habeas corpus, filed September 24, 2009. Therein, petitioner challenges her 2005 conviction on charges of corporal punishment or injury of a child, enhanced by infliction of great bodily injury, and the sentence of sixteen years and four months in state prison imposed thereon. Specifically, petitioner claims that (1) there was insufficient evidence to support the jury's true finding of a great bodily injury enhancement as to count 3; (2) the trial court violated petitioner's right to due process by imposing an upper term sentence based on facts not found by the jury; (3) the trial

1

court violated petitioner's right to due process based on a finding, that the crimes were planned, which was not supported by substantial evidence; and (4) petitioner's counsel provided ineffective assistance in failing to object to the trial court's use of planning as an aggravating factor at sentencing. Respondent contends that the claims are without merit.

## FACTS[1]

> [Petitioner], who was born and raised in Taiwan, married Thomas L. in 2001 and because a stepmother to his young daughter, T.L. Thomas's previous wife died of cancer when T.L. was around two years old. Thomas and [petitioner] had a daughter together, and [petitioner] stayed home to care for the two girls.
>
> On May 11, 2004, [petitioner] beat and strangled six-year-old T.L. into a persistent vegetative state when [petitioner] became enraged by T.L.'s dishonesty and disobedience.
>
> According to [petitioner]'s witnesses, which included several family members and church associates, [petitioner]'s violent outburst was uncharacteristic because she loved T.L. and was a very caring person. Various psychotherapists testified the episode likely was the result of [petitioner]'s own abusive upbringing; her rigid culturally-influenced attitudes about her role as a wife and mother and a child's duty to unquestioningly obey parental authority; and [petitioner]'s mental problems, including depression and possibly post-traumatic stress syndrome. According to them, these and other factors culminated in her explosion into an atypical rage on the night in question.
>
> Whether or not [petitioner]'s behavior was out of character is irrelevant to the tragic consequences suffered by T.L. [Petitioner]'s statement to Detective Charles Husted revealed that she completely overreacted to behavior that is typical of a six-year-old child. The statement recounted the following events:
>
> Around 9:00 p.m., [petitioner] observed T.L. grab or push her younger sister, who was 16 months old. When [petitioner] questioned T.L. about what had happened, T.L. lied and stated she had been playing with a stuffed animal. [Petitioner] confronted T.L. about the lie, spanked her repeatedly on the buttocks and hands, slapped her across the face four or five times, and pulled on

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Kao, No. C050639, filed November 28, 2007, a copy of which is included in this record as Lodged Document No. 23. This opinion is the last of several opinions issued by the California Court of Appeal during the process of direct appeal from petitioner's conviction. See id. at 2-3.

her ears. After T.L. apologized for lying, they hugged and [petitioner] then sent the child to stand in the bathroom for a time-out.

When Thomas telephoned [petitioner] around 10:00 p.m., she did not mention punishing T.L. After the phone call, [petitioner] went to check on T.L., who had been in the bathroom about an hour. T.L. was sitting down rather than standing up as [petitioner] had instructed her. Because [petitioner] did not want to wake the baby, who was sleeping in a room near the bathroom, [petitioner] hauled T.L. by the neck to the master bedroom walk-in closet. [Petitioner] scolded T.L. and when she did not receive a satisfactory response, [petitioner] spanked the child five or six times on the buttocks with a plastic hanger, breaking the hanger in the process.

Still angry, [petitioner] continued to press T.L. about her lying and asked, "What if I told you I won't push you again, but I did? I lied to you. I'm lying to you. How do you feel?" [Petitioner] pushed T.L., who fell to the floor and hit her head. [Petitioner] heard a big bump and T.L. said it hurt. [Petitioner] made the girl stand up and then pushed her to the floor again. T.L. blinked her eyes and then closed them. T.L. did not wake up despite [petitioner]'s repeated attempts to arouse her. [Petitioner] assumed T.L. had fallen asleep from exhaustion or was pretending to be asleep so that she did not have to deal with [petitioner]. [Petitioner] carried T.L. to bed and covered her with a blanket. Although [petitioner] claimed that she did not realize T.L. was unconscious, her claim is belied by the fact she put a diaper on the six-year-old child to ensure that she did not wet the bed.

[Petitioner] checked on T.L. twice during the night. When she was still unresponsive at 6:00 a.m. the next morning, [petitioner] called a friend in New Jersey, who suggested that [petitioner] call someone who lived closer. [Petitioner] telephone a woman, who attended the same church in Oakland. The woman told [petitioner] to take T.L. to the hospital immediately.

Upon her arrival at the emergency room, T.L. was lethargic and limp, her eyes were closed, and her breathing was shallow. [Petitioner] admitted hitting T.L. and asked a nurse not to call social services. Detective Husted responded to a child abuse call and interviewed [petitioner] later that day, during which she made the statements we have summarized above.

Dr. Angela Rosas, a pediatrician specializing in child abuse cases, examined T.L., who was comatose, completely unresponsive even to painful stimuli, and on a ventilator. Her pupils were fixed and dilated, indicating serious injury to the deep parts of her brain. T.L. had multiple bruises and injuries all over her body, including small bruises called petechiae on her face, neck, chest and

shoulders, bleeding from her mouth, bruises on both ears, abrasions to her lips, and multiple linear bruises on her lower back and buttocks. The linear bruises were consistent with being beaten forcefully with a hanger.

Dr. Rosas also observed petechiae and bruises around T.L.'s neck and chin, consistent with grab marks and strangulation. Her suspicions regarding strangulation were confirmed when she reviewed the scans of T.L.'s brain, which disclosed a "classic" asphyxiation injury. The scans showed swelling and severe oxygen deficit, which Rosas opined was caused by the compression and obstruction of T.L.'s windpipe for around four to six minutes, or by a partial obstruction for a longer period of time. All of the child's brain tissue was destroyed, exception for the portion that controlled her breathing. She was in a persistent vegetative state. If T.L. had received medical care significantly earlier, she would have had a better outcome.

According to Dr. Rosas, T.L. also had a moderate subdural hematoma on the left side of her head. This is a collection of blood between the brain and the surrounding casing, and is usually caused by an impact injury. The injury was consistent with T.L. hitting her head on the closet floor. In Rosas's opinion, the hematoma did not contribute to T.L.'s persistent vegetative state, but it had contributed to her need to be hospitalized.

Dr. Rosas concluded that the strangulation occurred after [petitioner] beat T.L. with the hanger and pushed her to the ground. This was so because if T.L. had been asphyxiated first, she would not have been able to stand up for the beating or to be shoved to the ground. According to Rosas, T.L. will never be able to see, talk, hear, walk, or eat again.

When Detective Husted told [petitioner] that it looked as if someone had choked T.L., [petitioner] admitted she had pulled T.L. up from the floor with both hands around her neck, but she denied that she had squeezed her neck.

The jury convicted [petitioner] of three counts of corporal injury to a child based on [petitioner] beating T.L. with a hanger (count four), causing a subdural hematoma when she pushed T.L. to the floor (count three), and asphyxiating T.L. until she almost died (count two). The jury also convicted [petitioner] of willful harm to a child based on [petitioner]'s failure to obtain medical care for T.L. in a timely manner (count five).

People v. Kao, No. C050639, slip op. at 3-7.

/////

/////

ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1),

> "a state court decision is contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A state court decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular [petitioner's] case." <u>Williams</u>, 529 U.S. at 407, 120 S.Ct. 1495. The state's application of the Supreme Court precedent "must be shown to be not only erroneous, but objectively unreasonable." <u>Waddington v. Sarausad</u>, 555 U.S. 179, 129 S.Ct. 823, 831, 172 L.Ed.2d 532 (2009) (emphasis added) (quoting <u>Middleton v. McNeil</u>, 541 U.S. 433, 436, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (per curiam)) (internal quotation marks omitted).

<u>John-Charles v. California</u>, 646 F.3d 1243, 1247 (9th Cir. 2011).

A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u> at 412. "A state court's determination that a claim lacks merit

5

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record "to determine whether the state court clearly erred in its application of Supreme Court law." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002) (citing Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000)) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.").

II. Petitioner's Claims

   A. Ground One

Petitioner's first claim is that there was insufficient evidence to support the jury's true finding on the great bodily injury enhancement as to count 3, which was based on petitioner's act of pushing her stepdaughter to the floor thereby causing her to suffer a subdural hematoma. The last reasoned state court rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal, which rejected the claim as follows:

> [Petitioner] challenges the great bodily injury enhancement on count three, in which T.L. suffered a subdural hematoma.
>
> Section 12022.7, subdivision (f) defines great bodily injury as "a significant or substantial physical injury." This "standard contains no specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." (*People v. Escobar* (1992) 3 Cal.4th 740, 750 (hereafter *Escobar*).) However, the victim's injury must exceed the injury inherent in the substantive offense. (*Id*. at pp. 746-747, 749-750.) Thus, a section 12022.7 enhancement may not be

6

imposed where great bodily injury is an element of the offense. (*People v. Parrish* (1985) 170 Cal.App.3d 336, 344.)

Section 273d states in pertinent part: "(a) Any person who willfully inflicts upon a child any cruel or inhuman corporal punishment or an injury resulting in a traumatic condition is guilty of a felony . . . ." A traumatic condition is a wound or other abnormal bodily condition, either minor or serious, resulting from the application of physical force. (*People v. Thomas* (1976) 65 Cal.App.3d 854, 857; CALJIC No. 9.36.) Because a traumatic condition may be minor or serious, it follows that (1) great bodily injury is not an element of the substantive offense, and (2) a section 12022.7 enhancement may be imposed upon a section 273d, subdivision (a) conviction. (Cf. *People v. Chaffer* (2003) 111 Cal.App.4th 1037, 1042 [construing "traumatic condition" for purposes of section 273.5].)

[Petitioner] argues, however, there is insufficient evidence the moderate subdural hematoma T.L. suffered was the equivalent of a great bodily injury rather than simply a traumatic condition. According to [petitioner], "[s]aying a single bruise is 'moderate' in size does not raise it to the level of a serious or substantial injury."

[Petitioner] minimizes the nature of the injury by ignoring the location of the "bruise." A moderate subdural hematoma is not the equivalent of a medium-sized bruise on the shin. It involves "bleeding about the brain." According to Dr. Rosas, T.L. required surgery to relieve the pressure on her brain that was caused by the swelling from the strangulation *and from the subdural hematoma* caused by the impact injury. Although the hematoma did not cause T.L.'s vegetative state, it "contributed to her illness and the reason why she was in the hospital." It was a contributing factor to T.L.'s coma, which was the condition T.L. experienced before she progressed to a persistent vegetative state. If T.L. had suffered only the hematoma, she would have recovered but would have required medical attention to "make sure the blood resolve[d]."

This evidence amply supports the finding that T.L. suffered great bodily injury. For example, *Escobar* upheld a finding of great bodily injury based upon a rape victim's bloody knees, vaginal soreness, abrasions, and painful neck. (*Escobar*, *supra*, 3 Cal.4th at pp. 744, 749-750.) Here, unlike the victim in *Escobar*, T.L. is unable to speak. Thus, she cannot relate the degree of pain she suffered from the subdural hematoma. However, T.L.'s injury to her head, which involved internal bleeding and required surgery and medical monitoring, was at least as severe as the injuries suffered in *Escobar*. The section 12022.7 finding is supported by substantial evidence. (*Id*. at p. 750 [a great bodily injury finding must be upheld if it is supported by substantial evidence, even if

/////

7

    the circumstances might reasonably be reconciled with a contrary
    finding].)

People v. Kao, slip op. at 10-13.

    When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. 307, 319. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. 307, 324 n.16.

    California Penal Code § 12022.7 provides an enhanced prison sentence for "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony. . . ." Under California law, an enhancement under California Penal Code § 12022.7 must be based on evidence of a "substantial injury *beyond* that inherent in the offense itself." People v. Escobar, 3 Cal.4th 740, 746 (1992). Evidence of "significant or substantial physical injury" is required to demonstrate great bodily injury as used in § 12022.7. Id. at 747-748. There is "no specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted disfigurement, impairment, or loss of bodily function." Id. at 750.

California Penal Code § 273d provides in relevant part that "[a]ny person who willfully inflicts upon a child any cruel or inhuman corporal punishment or an injury resulting in a traumatic condition is guilty of a felony" punishable by imprisonment and/or a fine.  Cal. Penal Code § 273d(a).  "For purposes of the statute, traumatic condition has been defined as a wound or other abnormal bodily condition resulting from the application of some external force." People v. Stewart, 188 Cal.App.2d 88, 89 (1961) (citing People v. Burns, 88 Cal.App.2d 867 (1948)).  At least one state appellate court has held, in an analogous context, that the phrase "traumatic condition" encompasses both minor and serious injuries and that "serious injury is not an essential component" of a crime that requires proof that a "traumatic condition" was suffered.  See People v. Chaffer, 111 Cal.App.4th 1037, 1044 (2003) (affirming § 12022.7 enhancement applied to conviction under Cal. Penal Code § 273.5).

Petitioner's claim requires a determination by this court of the reasonableness of the state court's determination that there was sufficient evidence to support the jury's finding that the subdural hematoma suffered by T.L. was a "substantial injury" beyond the "traumatic condition" required to convict petitioner of the § 273d violation.  Petitioner is only entitled to relief on the claim in this federal habeas corpus proceeding if no "fairminded jurist[ ]" could find the state court's decision reasonable.  See Harrington, supra.

At trial, Dr. Angela Rosas, a clinical pediatrician who specializes in child abuse offered the following testimony relevant to the instant claim.

On direct examination, Dr. Rosas offered the following testimony concerning the subdural hematoma suffered. by T.L.  A tube was surgically placed in T.L.'s head to relieve pressure on the brain.  Reporter's Transcript on Appeal (RT) at 708:17-13.  The brain swelling was caused by "[l]ack of oxygen from strangulation." Id. at 708:14-17.  When asked if that was what "necessitated the surgery to put the tube in" Dr. Rosas responded "Yes.  That and there was also some bleeding about the brain that likely came from the impact injury." Id. at 708:18-21.  Subsequently, Dr. Rosas identified the "bleeding about the brain" as a "subdural hematoma . . .

caused by impact injury to the head" that "could result in some concussive symptoms where she might have felt dazed, but might still have been able to stand up." Id. at 783:5-13. The "subdural hematoma did not cause significant pressure" on T.L.'s brain, did not "cause or impede the flow of blood to the brain", that "[i]f anything, the swollen brain was putting pressure on the subdural hematoma", and did not contribute to the lack of oxygen to T.L.'s brain. Id. at 817:20-818:15.

The subdural hematoma was a "serious" injury. Id. at 823:1-4. Because the swelling in T.L.'s brain was "horrible" the subdural hematoma "really did not contribute as much to her severe life-threatening condition." Id. at 824:16-827:2. It did not contribute to T.L.'s persistent vegetative state. Id. at 838:13-15. It did "contribute to her illness and the reason why she was in the hospital" and to her being in a coma, though "less so than the lack of oxygen to the brain." Id. at 840:6-16. It "could cause some sort of concussive symptoms which means some dazedness or occasionally loss of consciousness but briefly. And that could have contributed to her comma [sic] state." Id. at 850:1-5. Dr. Rosas further testified that "children who have subdural hematomas to this degree without underlying brain injury do just fine. They – we follow them to make sure that the blood resolves but they don't have any long-term disabilities." Id. at 850:6-9.

Dr. Rosas' testimony that the surgical intubation was in part required by the subdural hematoma and that the hematoma contributed to T.L.'s coma is sufficient evidence to support the jury's true finding on the enhancement. Based on the foregoing, this court finds that the state court's rejection of this claim was not based on an unreasonable determination of the facts, nor was it contrary to relevant principles of federal law clearly established by United States Supreme Court authority. Accordingly, this claim will be denied.

B.  Ground Two

Petitioner's second claim is that the trial court violated petitioner's right to due process by imposing the upper prison term based on it's finding that petitioner occupied a

position of trust. Petitioner contends this factual finding was not made by a jury and therefore could not be used to increase her sentence.

The last reasoned state court rejection of this claim is the November 28, 2007 decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal, which rejected the claim as follows:

> [Petitioner] correctly contends the trial court's imposition of the upper term on her conviction for corporal injury to a child (count two) violated the Sixth Amendment to the United States Constitution as interpreted in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (hereafter *Apprendi*), *Blakely v. Washington, supra,* 542 U.S. 296 [159 L.Ed.2d 403] (hereafter *Blakely*) and *Cunningham*, *supra*, 549 U.S. __ [166 L.Ed.2d 856].
>
> *Apprendi* held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be tried to a jury and proved beyond a reasonable doubt. (*Apprendi, supra*, 530 U.S. at p. 490 [147 L.Ed.2d at p. 455].) For this purpose, the statutory maximum is the maximum sentence a court could impose based solely on facts reflected by a jury's verdict or admitted by the defendant; thus, when a court's authority to impose an enhanced sentence depends upon additional fact findings, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts. (*Blakely*, *supra*, 542 U.S. at pp. 303-305 [159 L.Ed.2d at pp. 413-414].)
>
> Accordingly, in *Cunningham*, *supra*, 549 U.S. at p. __ [166 L.Ed.2d at p. 864], the United States Supreme Court held that by "assign[ing] to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence," California's determinate sentencing law "violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendment." (*Ibid*., overruling *Black I, supra*, 35 Cal.4th 1238 on this point [*Black I* was vacated in *Black v. California* (2007) __ U.S. __ [167 L.Ed.2d 36]].)
>
> Here, the trial court imposed the upper term in reliance on the fact that [petitioner], who had no prior criminal history, occupied a position of trust with respect to the victim. (Cal. Rules of Court, rule 4.421(a)(11).) This judicial fact finding violated [petitioner]'s constitutional right to a jury trial. (*Cunningham, supra,* 549 U.S. at p. __ [166 L.Ed.2d at p. 864] [court could not rely on the particular vulnerability of the victim where such fact was not submitted to, and found by, the jury].)
>
> *Cunningham* error in failing to submit a punishment-increasing factual issue to the jury is subject to harmless error analysis under

11

the beyond-a-reasonable doubt test of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710]. (*Sandoval, supra,* 41 Cal.4th at p. 838; *People v. Davis* (2005) 36 Cal.4th 510, 564; see also *U.S. v. Zepeda-Martinez* (9th Cir. 2006) 470 F.3d 909, 913 [the error is harmless where the record contains overwhelming and uncontroverted evidence supporting the sentencing factor].) Accordingly, we must determine whether "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury." (*Sandoval, supra,* 41 Cal.4th at p. 839.) [Footnote omitted.]

[Petitioner] claims the sentencing error is not harmless because she did not have any reason or opportunity to submit evidence at trial regarding whether she took advantage of a position of trust. She notes *Sandoval* explained that "a reviewing court cannot always be confident that the factual record would have been the same had aggravating circumstances been charged and tried to the jury. [¶] Additionally, to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confident that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*Sandoval, supra,* 41 Cal.4th at p. 840.)

In [petitioner]'s view, we cannot say beyond a reasonable doubt that a jury would find she *took advantage* of a position of trust or confidence to commit the offense given the ample evidence that she uncharacteristically lost control of herself due to fatigue, depression, and stress.

[Petitioner] fails to appreciate that her view of how the offenses occurred and a determination that she abused a position of trust are not mutually exclusive. It matters not whether she acted pursuant to a well-devised plan to torture T.L. or whether she acted in an impulsive rage; the result under either scenario is that [petitioner] (the stepmother and primary care giver of the six-year-old victim) occupied and took advantage of a position of trust to commit the crimes. T.L. was in [petitioner]'s sole care when [petitioner] changed the little girl's life forever, and T.L. had depended on [petitioner] to keep her safe. [Petitioner]'s husband, Thomas, who was opposed to corporal punishment, also depended on [petitioner] and entrusted her with T.L.'s safety in his absence. Unfortunately, [petitioner] abused their trust when she spanked T.L. for lying and then forced her to engage in an hour-long "standing" time-out, which exceeded the endurance of the six-year-old girl and was destined to fail. When T.L. foreseeably chose to sit down during her lengthy punishment, [petitioner] became enraged and dragged the helpless child into a closet, severely beat her with a hanger, pushed her to the floor where she hit her head, and then failed to

> obtain timely medical attention for T.L. when she became
> comatose. Absent [petitioner]'s position of trust, T.L. would not
> have submitted to [petitioner]'s punishments. Moreover, Thomas
> would not have left his young child in [petitioner]'s care if he knew
> that she would abuse his trust by beating T.L. and thereafter failing
> to obtain medical attention in a timely fashion.
>
> Because there was overwhelming evidence that when she
> committed the crime, [petitioner] took advantage of, and abused,
> her position of trust with respect to the victim, we conclude beyond
> a reasonable doubt that if this aggravating circumstance had been
> submitted to the jury for its factual determination, "the jury,
> applying the beyond-a-reasonable-doubt standard, unquestionably
> would have found [it to be] true . . . .." (*Sandoval, supra,* 41
> Cal.4th at p. 839.) Therefore, the error in not submitting the
> aggravating circumstance to the jury was harmless.

People v. Kao, slip op. at 14-18.

The United States Supreme Court has held that "[f]ailure to submit a sentencing factor to the jury . . . is not structural error." Washington v. Recuenco, 548 U.S. 212, 222 (2006). Consequently, such an error is subject to harmless error review under the standard announced in Chapman v. California, 386 U.S. 18 (1967). See U.S. v. Zepeda-Martinez, 470 F.3d 909, 912 (9th Cir. 2006) (citing Washington v. Recuenco, supra, in turn citing Neder v. United States, 527 U.S. 1 (1999)).[2] Under this standard, the error is harmless "if the court finds beyond a reasonable doubt that the result 'would have been the same absent the error.'" Zepeda-Martinez, at 913. An error is harmless if "the record contains 'overwhelming' and 'uncontroverted' evidence" to support the finding. Id. Petitioner is only entitled to relief if the federal court finds that the state

---

[2] In Butler v. Curry, 528 F.3d 624 (9th Cir. 2008), the United States Court of Appeals for the Ninth Circuit applied the harmless error test from Brecht v. Abrahamson, 507 U.S. 619 (1993), holding that error of this kind is harmless unless it "'had a substantial and injurious effect'" on petitioner's sentence and that relief is granted if the court is in "'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt.'" Butler, at 648 (quoting O'Neal v. McAninch, 513 U.S. 432, 436 (1995)). The Brecht standard applies in "habeas corpus cases where the state appellate court already ha[s] conducted a harmless error review (albeit in an improper manner) and the federal district court [is] conducting its own independent harmless error review." Bains v. Cambra, 204 F.3d 964, 976 (9th Cir. 2000) (citing Brecht, 507 U.S. at 636-38; see also Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005).

court's rejection of the claim was contrary to these principles of federal law or based on an unreasonable determination of the facts.

As noted above, the state court found that the trial court committed a constitutional error in relying on this factor, but that the error was harmless because the jury would "unquestionably" have found, beyond a reasonable doubt, that petitioner took advantage of a position of trust with respect to T.L. in committing the offenses. This determination is based on a reasonable view of the facts and entirely congruent with the Chapman standard that controls the error analysis. Petitioner's second claim for relief will be denied.

   3. Grounds Three and Four

Petitioner's third claim is that her right to due process was violated by the trial court's imposition of consecutive sentences on counts 3, 4 and 5 because there was insufficient evidence to support the court's finding that those crimes were planned. She also claims in her fourth claim that her attorney provided ineffective assistance by failing to object to the trial court's use of planning as a sentencing factor. The last reasoned state court rejection of these claims is the November 28, 2007 decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal, which rejected the claim as follows:

> According to [petitioner], the trial court erred in imposing consecutive sentences based on the aggravating factor that the manner in which the crime was carried out indicated planning. (Cal. Rules of Court, Rule 4.421(a)(8).) She claims the only evidence of planning is that because she did not want to awaken the baby, who was sleeping in a room nearby, she took T.L. into the closet before punishing her. [Petitioner] acknowledges that her attorney failed to object on this ground at the sentencing hearing. She asserts, however, that if this oversight results in the waiver of her claim, then she received ineffective assistance of counsel.
>
> As we will explain, because such an objection ultimately would have proved futile, defense counsel was not incompetent for failing to object to the trial court's consideration of the challenged aggravating factor. (*People v. Mendoza* (2000) 24 Cal.4th at 130, 171; *People v. Constancio* (1974) 42 Cal.App.3d 533, 546 ["It is not incumbent upon trial counsel to advance meritless arguments or to undertake useless procedural challenges merely to create a

/////

> record impregnable to assault for claimed inadequacy of counsel"].)
>
> It does not matter whether [petitioner] took T.L. to the closet, so as not to awaken the baby as [petitioner] contends, or whether she took her there so the neighbors could not hear T.L.'s screams, as the People contend. Both scenarios support the trial court's finding of premeditation and planning. [Petitioner] did not simply erupt in an uncontrollable fit of rage and lash out at her six-year-old stepdaughter after [petitioner] found T.L. sitting in the bathroom during the girl's lengthy time-out. Rather, [petitioner] marched T.L. from the bathroom into the master bedroom closet with the intent of privately administering physical punishment therein, without being inconvenienced by awaking her sleeping child as the result of T.L.'s foreseeably voluble resistance. The court determination that this conduct demonstrated planning was not arbitrary or irrational. [Citation omitted.]

People v. Kao, slip op. at 13-14.

The standards for a claim based on insufficient evidence are set forth in section IIA, supra. California Rule of Court 4.421(a)(8) defines as an aggravating circumstance that "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism." Cal. Rules of Court. 4.421(a)(8). The United States Supreme Court has recently emphasized that under Jackson, supra, "evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found'" the essential facts beyond a reasonable doubt. Cavazos v. Smith, _ U.S. _, 2011 WL 5118826, slip op. at 3 (Oct. 31, 2011) (quoting Jackson, 443 U.S. at 319). In addition, as noted above, federal habeas corpus relief is unavailable unless no fairminded jurist could agree with the state court's rejection of the claim. See Harrington, supra; see also Cavazos, id. Were this court reviewing the record under an independent standard of review, the court might draw a different conclusion concerning the sufficiency of evidence to support a finding that petitioner's decision to take her stepdaughter to the master bedroom closet evidenced planning. However, in light of the exacting standards applicable to federal habeas corpus review, this court cannot find unreasonable the state appellate court's determination that there was

/////

sufficient evidence of planning to support the trial court's sentencing decision. This claim will therefore be denied.

Similarly, on review of the record under standards less exacting than those that apply in this federal habeas corpus proceeding, this court might take a different view of the probability that an objection by trial counsel to use of this factor might have led to a different outcome at sentencing. See Strickland v. Washington, 466 U.S. 688, 693-694 (1984). However, in light of those standards and in view of the fact that petitioner's third claim for relief must be denied on the merits, her claim that her trial counsel was ineffective for failing to object to use of the planning factor at sentencing must also be denied on the ground that she suffered no cognizable prejudice as a result of the failure to object.

For all of the foregoing reasons, petitioner's application for a writ of habeas corpus should be denied. Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons set forth in this opinion, this court finds that petitioner has made a substantial showing of the denial of a constitutional right in grounds three and four of the petition. Accordingly, the court will issue a certificate of appealability as to those claims.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied; and

/////

/////

/////

2. A certificate of appealability is issued as to the claims raised in grounds three and four of the petition.

DATED: November 22, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

12
kao2674.hab